UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**GLENN LLC,**

    *Plaintiff*,

v.                                                                 Case No. 5:24-CV-00943-JKP

**NFS LEASING INC,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant NFS Leasing Inc.'s ("NFS") Motion to Dismiss Plaintiff Glenn LLC's ("Glenn") Original Petition for failure to state a claim. *ECF No. 6*. Glenn filed a Response to the Motion and NFS filed a Reply. *ECF Nos. 11, 13*. Upon consideration, the Court concludes NFS's Motion shall be **DENIED**.

## BACKGROUND

This case arises from two alleged oral agreements between Plaintiff Glenn LLC ("Glenn") and Defendant NFS Leasing Inc. ("NFS"). As to the first (the "broker agreement"), Glenn alleges NFS agreed for Glenn to act as the exclusive broker of six Dragon Frac Pumps (the "frac pumps") owned by NFS. *ECF No. 1-4 at 9*. Regarding the second (the "sales agreement"), Glenn alleges NFS contacted Glenn and offered to sell the frac pumps to Glenn outright for $1,000,000. *Id. at* 8. According to Glenn, NFS breached both the broker agreement and the sales agreement.

The following facts relating to the broker agreement and the sales agreement derive from Glenn's Original Petition and are taken as true for purposes of adjudicating NFS's Motion to Dismiss. *Id.; ECF No. 6*.

### I. The Broker Agreement

Glenn is a broker which buys, sells, and facilitates transactions involving, among other things, oil production equipment. *ECF No. 1-4 at 2*.

On May 30, 2024, NFS informed Glenn it sought to sell the frac pumps. *Id.* NFS indicated it sought $330,000 per frac pump and intended to sell all six frac pumps together in one lot. *Id.* Thus, NFS sought a total of nearly $2 million for the frac pumps. *Id.* NFS represented the frac pumps were in good condition with few operating hours. *Id. at 3*.

Eventually, NFS agreed for Glenn to act as the exclusive broker of the frac pumps. *Id at 3*. NFS and Glenn agreed Glenn would identify a buyer for the frac pumps and, once a sale of the frac pumps was formalized, NFS would pay Glenn all profits beyond the identified price per pump the parties previously agreed to. *Id at 3*.

Glenn identified potential buyers and on June 21, 2024, Glenn brought a potential buyer to inspect the frac pumps. *Id. at 3*. At the time, Glenn realized NFS's representations relating to the condition and quality of the frac pumps were false. *Id. at 4*. Glenn confronted NFS about the representations and NFS admitted to misrepresenting the conditions and operating hours of the frac pumps. *Id. at 4*. NFS informed Glenn it still desired Glenn be the exclusive broker for the frac pumps. *Id. at 4*.

Because of the work to be done on the frac pumps, including mechanical repairs, Glenn informed NFS the broker agreement needed to be revised. *Id. at 5*. NFS reaffirmed Glenn would provide exclusive brokerage services, but NFS amended the price to be paid in an eventual sale. *Id. at 5*. Specifically, given the condition of the frac pumps, NFS agreed to accept a lower total sale price of $1,000,000 for the frac pumps. *Id. at 5*.

Based on the revised agreement with NFS, Glenn continued working to find a buyer for the frac pumps. *Id. at 5*. In addition, Glenn received approval from NFS to hire a mechanic to complete the mechanical repairs. *Id. at 5*. The mechanic completed the mechanical repairs on the pumps on July 27, 2024. *Id. at 6*. The total cost of the mechanical repairs exceeded $100,000, which Glenn paid. *Id. at 6*. Glenn agreed to pay the cost of the mechanical repairs as part of its agreement with NFS to provide exclusive brokerage services. *Id. at 6*.

## II. The Sales Agreement

Following the mechanical repairs, Glenn continued to try to obtain a buyer for the frac pumps. *ECF No. 1-4 at 6*. Eventually, NFS contacted Glenn and offered to sell the frac pumps to Glenn outright for $1,000,000. *Id.* Glenn orally accepted NFS's offer. *Id.* NFS and Glenn agreed to memorialize the sale in a follow-up written agreement. *Id.* The follow-up written agreement would determine ancillary terms of the agreement, such as delivery of the frac pumps. *Id.*

NFS confirmed the agreement for the sale of the frac pumps for $1,000,000 via text message and NFS requested Glenn send NFS a letter of intent. *Id.* On August 2, 2024, Glenn sent a letter of intent, specifying a closing deadline of August 9, 2024. *Id. at 7*.

Glenn began notifying potential buyers it would no longer be a broker for NFS but would be selling the pumps directly. *Id. at 7*. Multiple buyers made offers to Glenn, including at prices between $1,500,000 and $1,750,000. *Id. at 7*.

On August 5, 2024, NFS sent Glenn a text message stating "[it] need[ed] to talk [to Glenn] now." *Id. at 7*. During the conversation, NFS became upset Glenn intended to resale the frac pumps for such a high price. *Id. at 8*. Glenn explained to NFS the price reflected the work Glenn completed before the resale could take place. *Id. at 8*. The conversation ended with NFS reaffirming its agreement to sell the frac pumps to Glenn for $1,000,000. *Id. at 8*.

On August 7, 2024, however, NFS sent Glenn a cease-and-desist letter stating Glenn had no interest in the frac pumps and purporting to terminate any and all dealings between NFS and Glenn. *Id. at 8*. The cease-and-desist letter further stated NFS would not pay for any of the mechanical repairs performed on the frac pumps. *Id. at 8*. On August 12, 2024, NFS informed Glenn it sold the frac pumps to a different buyer. *Id. at 8*.

As a result, on August 21, 2024, Glenn filed its Original Petition in the 207th Judicial District Court of Comal County, Texas, asserting causes of action against NFS for: (1) breach of the broker agreement; (2) breach of the sales agreement; and (3) unjust enrichment. *ECF No. 1-4 at 8–10*. Subsequently, NFS removed the case to this Court on September 12, 2024. *ECF No. 1*.

NFS now moves to dismiss Glenn's Original Petition for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *ECF No. 6*.

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate

"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id*. When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

A Complaint should only be dismissed under Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action

5

with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## ANALYSIS

### I. Breach of Contract (Broker Agreement)

In its Motion to Dismiss, NFS argues the facts are insufficient to show the existence of a "valid and enforceable [broker] agreement between the parties at the time of the alleged breach." *ECF No. 6 at 6*. To state a cause of action for breach of contract, a plaintiff must allege sufficient facts to demonstrate:

> (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach.

*Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014); *Runge v. Raytheon E–Systems, Inc.*, 57 S.W.3d 562, 565 (Tex. App.—Waco [10th Dist.] 2001). In its Response, Glenn draws to the Court's attention the following allegations in its Original Petition:

> In Count II, Glenn alleges that: 1) the parties entered into an oral agreement under which Glenn was to act as the exclusive broker of the pumps and identify potential buyers for NFS in exchange for all of the profits on any sale beyond the identified price per pump agreed upon by the parties; 2) Glenn did provide broker services pursuant to the agreement; 3) but NFS breached the agreement by selling the pumps without regard to the broker services and refusing to pay Glenn the agreed upon profits from its eventual sale of the pumps; and 4) Glenn has suffered damages, including lost profits and out-of-pocket costs of repair, as a result of the breach.

*ECF No. 11 at 8* (citing *ECF No. 1-4*). Viewing these allegations "in the light most favorable to" Glenn, the Court finds Glenn has sufficiently alleged NFS breached the alleged broker agreement. *Martin*, 369 F.3d at 467.

NFS further argues, however, the allegations in Glenn's Original Petition indicate "the alleged [broker] agreement was terminated prior to any alleged breach." *ECF No. 6 at 6*. For support, NFS cites the following allegations:

> On August 7, 2024, [NFS] sent [Glenn] a cease-and-desist letter claiming Glenn had no interest in the pumps and purporting to terminate any and all dealings between NFS and Glenn.
>
> . . .
>
> On [] August 12, 2024, NFS represented to Glenn that it had sold the frac pumps to a different buyer in direct breach of the parties' agreement.

*ECF No. 1-4 at 8*. Thus, according to NFS "under the facts [plead] the alleged [broker] agreement is not valid or enforceable against the parties as of August 7, 2024—five days before the alleged breach." *ECF No. 6 at 6*.

Upon review, this argument relies on contested facts not contained or referenced in the parties' pleadings. On a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Brand*, 748 F.3d at 635. NFS's argument hinges on its cease-and-desist letter terminating the alleged broker agreement. This requires factual findings that cannot be made at the Rule 12(b)(6) stage wherein the Court accepts Glenn's facts as true. *Martin*, 369 F.3d at 467. The Court also notes NFS did not attach the cease-and-desist letter to its Motion to Dismiss. Accordingly, in this respect NFS's Motion to Dismiss is denied.

## II. Breach of Contact (Sales Agreement)

NFS next argues the facts are insufficient to show the existence of a valid contract because the alleged sales agreement is oral and violated the statute of frauds. *ECF No. 6 at 3–5*. The Texas statute of frauds provides:

> (a) Except as otherwise provided in this section **a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker**. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Tex. Bus. & Com. Code § 2.201(a) (emphasis added). There are a variety of exceptions to the statute of frauds. For example, the "merchant's exception" will satisfy the requirements of § 2.201(a). *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, *writ denied*). The "merchant's exception" provides:

> [B]etween merchants, a writing in confirmation of the contract will satisfy the requirements of § 2.201(a) if (1) it is received within a reasonable time, (2) it is sufficient against the sender, and (3) the party receiving it has reason to know its contents.

*Id.* (citing Tex. Bus. & Com. Code § 2.201(b)). Such a confirmation satisfies § 2.201(a) unless written notice of objection is given within 10 days after the confirmation is received. *Id.* (citing Tex. Bus. & Com. Code § 2.201(b)).

Here, NFS contends the alleged sales agreement is unenforceable under § 2.201(a) because, as alleged, it is an oral agreement and the price to be paid for the frac pumps is $1,000,000. *ECF No. 6 at 3–5*. In its Response, Glenn states "NFS's argument fails to acknowledge the applicability of the ["merchant's] exception . . . established in § 2.201(b)" and argues the facts in Glenn's Original Petition satisfy the exception. *ECF No. 11 at 6–7*. In its Reply, NFS counters Glenn fails to plead facts indicating NFS is a merchant. *ECF No. 13 at 1–2*.

Whether a contract falls within the statute of frauds is a question of law for the court to determine. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 149 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). But, whether the facts of a particular case fall within an exception to the stat-

ute of frauds, including Section 2.201(b), involves questions of fact. *E.g., Ah Ha Publ'g, LLC v. Herer*, No. 1:12-CV-00844, 2013 WL 8182656 at *5 (W.D. Tex. Jan. 7, 2013) (citing *Adams*, 754 S.W.2d at 705); *Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Prods., Inc.*, 410 F. App'x 738, 741 (5th Cir. 2010).

"Thus, it is usually for the jury to decide whether the parties were merchants, whether the writing was sent within a reasonable time, and whether the party receiving it had reason to know its contents. But if the writing itself does not, as a matter of law, constitute a confirmation, then the 'merchant's exception' in section 2.201(b) does not apply, and the contract is subject to the statute of frauds." *Adams*, 754 S.W.2d at 705.

Again, upon review, this argument relies on contested facts. Although Glenn's Original Petition appears to admit the alleged sales agreement was never reduced to writing, Glenn also alleges "[o]n or around August 2, 2024, Glenn sent a letter of intent to purchase the pumps, indicating a closing deadline of August 9, 2024," confirming the nature of the agreement. *ECF No. 1-4 at 7*. Given the potential statute of frauds exceptions applicable to this case, the Court declines to dismiss Glenn's breach of the sales agreement cause of action without the benefit of a full evidentiary record. Accordingly, in this respect NFS's Motion to Dismiss is also denied.

**III.    Unjust Enrichment**

NFS finally argues Glenn's unjust enrichment cause of action must be dismissed because "[u]njust enrichment . . . is not an independent cause of action" in Texas. *ECF No. 6 at 6–7*.

The Fifth Circuit has noted "Texas courts are divided on whether unjust enrichment is recognized as an independent cause of action or is merely recognized as a quasi-contractual theory of recovery." *In re Okedokun*, 968 F.3d 378, 391 (5th Cir. 2020). However, the Supreme Court of Texas has previously recognized unjust enrichment can be an independent cause of ac-

9

tion, *see HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998), and has otherwise repeatedly treated unjust enrichment as an independent cause of action, *see*, *e.g.*, *Elledge v. Friberg-Cooper Water Sup.*, 240 S.W.3d 869, 870 (Tex. 2007) (reaffirming limitations period for unjust enrichment claims is two years); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (discussing limitations period for unjust enrichment claims); *Fortune Prod. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) (referring to unjust enrichment cause of action). Under the circumstances, the Fifth Circuit has previously assumed, for purposes of appeal, unjust enrichment is an independent cause of action under Texas law. *Elias v. Pilo*, 781 F. App'x 336, 339 n.3 (5th Cir. 2019) (per curiam) (collecting cases).

Given Texas Supreme Court precedent suggests unjust enrichment can be an independent cause of action and NFS has not made a developed argument for dismissal on this basis or referenced any Fifth Circuit precedent instructing courts not to recognize unjust enrichment as an independent cause of action under Texas law, the Court declines to dismiss Glenn's cause of action at this stage of proceedings.[1] Rather, at the Rule 12(b)(6) stage, the Court will assume unjust enrichment may serve as a standalone cause of action under Texas law and allow Glenn to plead unjust enrichment in the alternative to its breach of contract causes of action.

Under Texas law, a "party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (same). Glenn's well-pleaded allegations, when taken as true, lead to the plausible inference NFS, through "taking an undue advantage in selling the frac pumps in breach of the parties' [alleged oral agreements]", obtained

---

[1] *E.g., CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-00182, 2022 WL 3441872 at *6 (E.D. Tex. Aug. 16, 2022); *JPM Restoration, Inc. v. ARES LLC*, No. 3:20-CV-03160, 2021 WL 487696 at *3 (N.D. Tex. Feb. 10, 2021).

the benefit "of repair work completed on the frac pumps" and "of broker services" from Glenn. *ECF No. 1-4 at 9–10*. That is sufficient at the pleading stage for Glenn's unjust enrichment cause of action to survive dismissal. Accordingly, in this respect NFS's Motion to Dismiss is also denied.

The Court agrees with NFS, however, Glenn's mentioning of "quantum meruit" for the first time in its Response is improper. *ECF No. 11 at 2*. "A party is relegated to its pleadings and cannot attempt to assert a new cause of action in its response. Rather, the party must seek leave to amend [its] complaint to include [its] new cause of action." *See Camp v. Ruffin*, No. 3:91-CV-1884-T, 1993 WL 741791, at *2 (N.D. Tex. Nov. 15, 1993), aff'd*, 30 F.3d 37 (5th Cir. 1994).

In addition, the Court agrees NFS complied with the Court's Standing Order, (*ECF No. 4*), by informing Glenn on September 4, 2024, the basis of its Motion to Dismiss. *ECF No. 6-1*. Under the Standing Order, Glenn has already been provided notice of the proposed deficiencies and the opportunity to amend its Original Petition prior to the filing of NFS' Motion to Dismiss. *See ECF No. 4*. Consequently, Glenn shall not be allowed an additional opportunity to amend its Complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002).

## CONCLUSION

Having considered NFS's Motion to Dismiss, (*ECF No. 6*), the record, and the relevant law, the Court concludes NFS's Motion is **DENIED**.

It is so ORDERED.
SIGNED this 24th day of March, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE